FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ SEP 23 2014 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TROY LAMBE, SUNRAY SOLAR INC., and
MAX DIVERSIFIED INC.,

          Plaintiffs,

    -against-

YOSSEF KAHLON, a/k/a JOSSEF KAHLON,
ATLAS SOLAR HOLDINGS LLC, ERICA T.
YITZHAK, THE LAW OFFICES OF ERICA T.
YITZHAK, and ERIKA T. YITZHAK, ESQ. P.C.,

          Defendants.
------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 13-3126

(Wexler, J.)

APPEARANCES:

Richard J. Reisch, Esq.
One Old Country Road
Carle Place, NY 11514
Attorney for Plaintiffs

Roy A. Klein, Esq.
532 Broad Hollow Road, #144
Melville, NY 11747
Attorney for Defendants Erica T. Yitzhak,
The Law Offices of Erica T. Yitzhak and
Erica T. Yitzhak Esq., P.C.

WEXLER, District Judge:

        Plaintiffs Troy Lambe ("Lambe"), Sunray Solar Inc. ("Sunray"), and Max Diversified Inc. ("Max") (collectively "Plaintiffs"), bring this diversity action against defendants Yossef Kahlon, a/k/a Jossef Kahlon ("Kahlon"), Atlas Solar Holdings LLC ("Atlas"), Erica T. Yitzhak, the Law Offices of Erica T. Yitzhak, and Erika T. Yitzhak, Esq. P.C. (together "Yitzhak") (collectively "Defendants"). Defendant Yitzhak moves to dismiss Plaintiffs' complaint pursuant to Federal

1

Rules of Civil Procedure ("Fed.R.Civ.P."), Rule 12(b)(6).

BACKGROUND

According to the allegations in Plaintiffs' amended complaint, Plaintiff Lambe is the sole shareholder and principal owner of Plaintiffs Sunray and Max. Amended Complaint ("Comp."), ¶ 16. From 2007 through 2013 Plaintiffs Sunray and Max were in the business of renewable solar energy systems, conducted in the state of New Jersey.[1] Cmplt., ¶¶19-20. Sunray located sites and customers, facilitated the projects and processed local approvals, and ordered and installed the systems through Max. Cmplt., ¶ 21-25. Once the system was approved and active, it would generate "Solar Renewable Energy Certificates ("SRECs"), which are a publically-traded market commodity, the value of which is subject to supply and demand. Cmplt., ¶ 27-28.

In and around 2011, Plaintiffs entered into various agreements with Defendants Kahlon and Atlas whereby Atlas and Kahlon would fund the systems facilitated by Plaintiffs for third-parties, and in return, Atlas and Kahlon would receive the SRECs, in addition to tax and other benefits. Cmplt., ¶ 29. Ultimately, Defendants invested in twenty-six (26) systems with Plaintiffs, and entered into various agreements, including a Contractor Installation and Completion Guarantee, whereby Defendants would fund the system and Plaintiffs would guarantee to complete the systems. All 26 systems were installed and successfully completed. Cmplt., ¶ 30-38. In addition, Sunray and Atlas entered into a Solar Energy Systems Maintenance Agreement, whereby Sunray would maintain the systems in return for payment by Atlas through the proceeds of the SRECs generated. Cmplt., ¶ 40.

---

[1] The individual Defendants are all residents of New York, and the corporate Defendants are incorporated in New York. Cmplt., ¶ 7-11.

Some time in August 2011 following policy changes in the state of New Jersey, the market value of SRECs dropped. Defendants Kahlon and Atlas cut off funding for the systems, and have not made any payments since that time. Cmplt., ¶ 44-46.

Plaintiffs sought other investment partners for other solar energy installation projects. It signed contracts with NJR Clean Energy Ventures Corporation ("NJR"), with whom it worked with on sixty-two (62) solar energy systems; Clean Power Finance ("Clean Power"); and NRG Energy ("NRG"), with whom it worked on eight (8) solar energy systems. Cmplt., ¶ 50-61.

In or about June 2012, Defendants Kahlon and Atlas hired Yitzhak, who filed at least two liens on Plaintiffs' assets with no notice to Plaintiffs. Cmplt., ¶ 47-49. On September 19, 2012, Defendant Yitzhak wrote to Plaintiffs informing them that liens had been placed on all of their assets, and falsely alleged that Plaintiff owed Defendant Atlas money, demanding payment under "various agreements" and threatening a lawsuit. Cmplt., ¶ 62-68.

On October 22, 2012, Plaintiffs were served with a Summons,[2] later made a Demand for the Complaint, and were served the complaint on February 5, 2013, with an affirmation of service by Yitzhak that the complaint had been served on December 18, 2012. Cmplt., ¶ 69-71.

On January 30, 2013, Defendant Yitzhak served a letter on Plaintiff's three other financial partners – NJR, Clean Power and NRG – stating that Defendants held liens against Plaintiffs, that legal action had been commenced, and that Defendants suffered as a result of Lambe's and

---

[2]While paragraph 69 of the amended complaint alleges that Plaintiffs were served with "a Summons and Complaint," elsewhere the amended complaint alleges Plaintiffs were served with a Summons with Notice on October 22, 2013. See Cmplt., ¶ 124. In light of Plaintiffs' Demand for Complaint and Notice in December, the Court presumes only a Summons with Notice was initially served. In either event, Plaintiffs' claims rest on the allegation that Yitzhak's subsequent affirmation of service was fictitious.

3

Sunray's "fraudulent and deceitful actions." A copy of the complaint and the liens was included, and the financial partners were advised to "refrain from forwarding any payments" to Sunray and Lambe. Cmplt., ¶ 72-77.

Following receipt of the letter, NJR terminated their agreement with Plaintiffs, and Clean Power and NRG said they would not move forward with Plaintiffs until the litigation was resolved. Cmplt. ¶ 78-81. Plaintiffs were forced to take a reduced fee for services provided, and were unable to complete up to 300 additional properties they anticipated would be funded by NJR, Clean Power and NRG. Cmplt., ¶ 82-85.

Plaintiffs's complaint alleges twelve causes of action, including three claims for tortious interference, and claims for defamation/trade libel, malicious use/abuse of process, violation of New York Judiciary Law § 487, negligence, professional malpractice/negligence, two claims for breach of contract, prima facie tort, and the unauthorized filing of UCC statements.

Defendant Yitzhak[3] moves to dismiss all claims, except for the breach of contract claims which are brought only against Kahlon and Atlas, pursuant to Fed.Civ.R.P., Rule 12(b)(6) for failure to state a claim.

## DISCUSSION

I. <u>Legal Principles</u>

    A. <u>Standards on Motion to Dismiss</u>

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaints as true, and draw all reasonable inferences in favor of plaintiffs. <u>Bold Electric, Inc. v. City of New York</u>, 53 F.3d 465, 469 (2d Cir. 1995). In <u>Bell</u>

---

[3]The other Defendants have not moved to dismiss.

Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court rejected the standard set forth in Conley v. Gibson, 355 U.S. 41 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," id. at 45-46. The Supreme Court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). Although heightened factual pleading is not the new standard, Twombley holds that a "formulaic recitation of cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1959. Further, a pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." Iqbal, 129 S. Ct. at 1950.

In reviewing a motion to dismiss, the court reviews the pleading itself, and does not consider matters outside the pleadings. See Fed.R.Civ.Pr, Rule 12(b)(6); Nakahata v. New York-Presbyterian Healthcare System, Inc., 723 F.3d 192, 202-203 (2d Cir. 2013).[4]

II.  Disposition of the Present Motion

The various claims in Plaintiffs' amended complaint essentially seek recovery for Defendants' interference with Plaintiffs' other business relationships. Plaintiffs allege that the harm to these relationships primarily resulted from Defendant Yitzhak's filing of the liens, her

---

[4] In support of her motion, Defendant Yitzhak submits a declaration challenging certain facts alleged in the complaint, and attaching various documents, including the Contractor Installation and Completion Guarantee, the UCC financing statement, the state court complaint, and the affirmation of service of the complaint, other court filings and the court decision in the state case. On a motion to dismiss, the Court does not consider matters outside the pleadings. If the Court does, the Court must convert it to a motion for summary judgment, which the Court declines to do here. Nakahata, 723 F.3d at 202-203.

5

commencement of the state court lawsuit and her letter of January 30, 2013 to Plaintiffs' other business partners stating that Plaintiffs engaged in "fraudulent and deceitful actions" and recommending that they "refrain from forwarding any payment" to Plaintiffs.

Yitzhak argues that "[n]one of these actions constitutes the kind of conduct that would render Yitzhak liable to the [P]laintiffs for damages." Defendant Yitzhak's Memorandum in Support ("Def. Mem."), at 1. Defendant also argues that Plaintiffs' allegations are too "threadbare" and do not adequately allege the requisite intent or malice for the various claims. Def. Mem., at 2, 8.

The Court notes that this is a motion to dismiss, not a motion for summary judgment. Accordingly, the Court must accept the factual allegations of Plaintiff's complaint as true, and draw all reasonable inferences in favor of Plaintiffs as required under Rule 12(b)(6). The Court finds that many of Defendant's arguments speak to whether there is merit to Plaintiffs' claims, which is more appropriately raised on a motion for summary judgment following discovery, rather than a motion to dismiss. Accepting the allegations of Yitzhak's conduct and communications with Plaintiffs' other business partners NRG, Clean Power and NJR as true, the Court finds that the complaint sufficiently alleges the malice necessary to support the claims for tortious interference, malicious abuse of process and prima facie tort claims against this Defendant.

Amongst other things, Yitzhak argues that she is immune from a claim for defamation, asserting that the statements made were pertinent to the litigation and intended to protect her clients' interest. Def. Mem., at 9-10. Defendant cites Sexton & Warmflash v. Magrabe, 38 A.D.3d 163, 828 N.Y.S.2d 315 (1st Dept. 2007), which states the rule that "'a statement made in the course of legal proceedings is absolutely privileged if it is at all pertinent to the litigation.'"

Id., at 828 N.Y.S.2d at 322 (quoting Lacher v. Engel, 33 A.D.3d 10, 13, 817 N.Y.S.2d 37 (2006) (other citations omitted)). "The privilege extends to judge, jurors, counsel, witnesses, and...the parties to the proceeding." Id. Defendant argues that the statements were "pertinent" to the litigation because they were made to protect Atlas' rights "by notifying parties having an interest in the lawsuit." Defendant's Memorandum in Reply ("Reply Mem."), at 5-6. Yet, the allegations assert, and the Plaintiffs argue, that the statements were made to interfere with Plaintiffs' business relationships. The Court finds that viewing the allegations in a light most favorable to Plaintiffs, they are sufficient to support a defamation claim.

Defendant also argues that there is no basis for Plaintiffs' claim under N.Y. Judiciary Law § 487, which gives an injured party a right of action to recover treble damages against an attorney who is "guilty of any deceit or collusion...with the intent to deceive the court or any party." Id. The factual basis for this claim, as well as the claim for professional malpractice/negligence, is Yitzhak's allegedly fictitious affirmation of service concerning that she had served the complaint in the state court action in December 2012. Defendant argues that the claim is not sufficiently specific, and in any event, did not cause damage. The Court finds that Plaintiffs' have sufficiently alleged a claim under the Judiciary Law § 487, and therefore Defendant's motion to dismiss this claim is denied.

Yitzhak also argues that there is no cause of action for an unauthorized filing of a UCC statement. The amended complaint alleges that Defendants did not conform with the statutory requirement of the UCC by filing the statements nine (9) months after the projects were completed. Cmplt., ¶ 177-184. NY UCC § 9-625 provides remedies for non-compliance of a UCC lien, including $500 per violation, as well as any damages caused by such conduct. NY

UCC § 9-625 (e). The Court finds that the amended complaint sufficiently alleges this claim, and Defendant's motion to dismiss is denied.

Finally, Yitzhak argues that the claim for negligence must be dismissed because an attorney for one party does not owe a duty to, or have privity with, another party. Def. Mem., at 6-7. "This Court has long held that before a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity." Prudential Insurance Co. v. Dewey Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 382, 590 N.Y.S.2d 831, 833 (1992) Whether there is privity to support a negligence claim, the New York courts have found it to exist where, for example, the attorney knew that the letter he wrote was to be used for business purposes and relied upon by the third party. See Prudential Insurance Co., 80 N.Y.2d at 385, 590 N.Y.S.2d at 835. In other words, privity exists "when an attorney has furnished specific advice to a third party, when that advice was the 'end and aim' of the transaction, when the attorney intended the third party to rely on that advice and when the reliance was foreseeable." LNC Invs, Inc., v. First Fidetlity Bank, Nat. Assn., 935 F.Supp. 1333, 1351 (S.D.N.Y. 1996). While the Court questions whether Plaintiffs' claim could survive a motion for summary judgment, it finds that on this motion to dismiss, Plaintiffs' allegations, if true, sufficiently support the claim. Plaintiffs allege that Yitzhak's letter provided Plaintiffs' other business partners with advice concerning Plaintiffs, which they expected them to heed. If such reliance was foreseeable, Plaintiffs may have a negligence claim against Yitzhak.

Having considered Defendant's other arguments and finding them to be without merit, Defendants' motion to dismiss is denied in its entirety.

## CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss Plaintiffs' amended complaint is hereby denied.

SO ORDERED.

                                            s/ Leonard D. Wexler
                                   LEONARD D. WEXLER
                                   UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       September 23, 2014